UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA MOORE,<br>Plaintiff,<br>v.<br>ROCKET MORTGAGE, LLC, et al.,<br>Defendants. | No. 2:26-cv-01854-DJC-DMC<br><br><u>ORDER</u> |

This case presents the question of whether 12 C.F.R. § 1024.38 creates a private right of action. Because the Court concludes that it does not and declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, this case is remanded to the Superior Court of California, County of Shasta.

**BACKGROUND**

In August 2017, Philip M. Crippen obtained a loan from Quicken Loans, Inc., which later became a limited liability company and changed its name to Rocket Mortgage, LLC. (Compl. (ECF No. 1-1) ¶ 12; Mot. (ECF No. 5) at 1.) Plaintiff and Mr. Crippen began to occupy the property located at 1854 Cirrus Street, Redding, CA 96002 together in May 2017 and subsequently married. (Compl. ¶¶ 1, 12.) In July 2019, Mr. Crippen passed away. (*Id.* ¶ 13; Mot. at 1.) Plaintiff alleges she continued to occupy Mr. Crippen's property after his death. (Compl. ¶ 14.) Plaintiff initially

continued to make mortgage payments on the loan but fell behind on these payments in 2024. (*Id.* ¶¶ 14–15; Mot. at 1.) As a result of the default, Defendant Clear Recon Corp. caused a Notice of Default to be recorded against the Property. (Compl. ¶ 16; Mot. at 2.)

Plaintiff alleges that "[n]o Defendant, including Rocket Mortgage, contacted Mr. Crippen or Plaintiff by telephone or in person . . . assessed finances, or explored all non-foreclosure options other than a COVID-related forbearance." (*Id.* ¶ 18.) After receiving the Notice of Default, Plaintiff allegedly contacted Rocket Mortgage "to request the necessary procedures for loan assumption following the death of the borrower" but "Rocket Mortgage agents refused to speak to Plaintiff and provide any guidance or direction on how to assume the Loan." (*Id.* ¶ 19.) On March 17, 2026, Clear Recon Corp. recorded a Notice of Trustee's Sale against the Property. (*Id.* ¶ 20; Mot. at 2.)

Based on these events, Plaintiff filed suit against Rocket Mortgage and Clear Recon Corp. in the Superior Court of California, County of Shasta. (*See generally* Compl.) Defendant Rocket Mortgage then removed the case to this Court and filed a Motion to Dismiss. This motion is fully briefed. (Mot. (ECF No. 5); (Opp'n (ECF No. 12); Reply (ECF No. 13).) Pursuant to Local Rule 230(g), this motion was submitted without oral argument. (ECF No. 15.)

## LEGAL STANDARD

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019). However, if the complaint's allegations do not "plausibly give rise to an entitlement to relief" the motion must be

granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

### I. Private Enforcement of 12 C.F.R. § 1024.38

Defendant seeks to dismiss Plaintiff's first cause of action based on alleged violation of 12 C.F.R. § 1024.38, a regulation promulgated under the Real Estate Settlement Procedures Act ("RESPA"). In relevant part, this regulation provides that a mortgage servicer "shall maintain policies and procedures that are reasonably designed to . . . promptly facilitate communication with any potential or confirmed successors in interest regarding the property." *Id.* § 1024.38(a); *id.* at § 1024.38(b)(vi)(A). Plaintiff alleges that, as Mr. Crippen's surviving spouse, she qualifies as a successor in interest and that Defendant failed to implement the policies required by this regulation by failing to contact her or respond to her outreach attempts. (Compl. ¶ 34; *see also* Opp'n at 5.) However, Defendant asserts Plaintiff cannot bring a claim under this regulation as it is not enforceable through a private right of action. (Mot. at 3.)

The Court agrees with Defendant. "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 698–99 (9th Cir. 2018) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)). "Congress may so empower litigants expressly or implicitly." *Id.* at 699. In determining if Congress implicitly created a cause of

action, the "judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Sandoval*, 532 U.S. at 286. "Without evidence of a congressional intent to create both a private right and a private remedy, a private right of action 'does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.'" *UFCW Loc. 1500 Pension Fund*, 895 F.3d at 699 (quoting *Sandoval*, 532 U.S. at 286–87).

As a threshold matter, a regulation cannot create a private right of action on its own. "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Sandoval*, 532 U.S. at 291; *see also Curtis v. Inslee*, 154 F.4th 678, 688–89 (9th Cir. 2025), *cert. denied,* No. 25-1119, 2026 WL 1513282 (U.S. June 1, 2026) (explaining that "a regulation 'may not create a right that Congress has not'" (quoting *Sandoval*, 532 U.S. at 291)). Therefore, 12 C.F.R. § 1024.38 on its own does not and cannot create a private right of action.

"In determining whether a particular regulation is enforceable through a statute's private right of action," courts "must look to the statute itself and determine whether it displays Congress's intent to create the private right purportedly contained in the regulation." *Lonberg v. City of Riverside*, 571 F.3d 846, 850 (9th Cir. 2009). The preamble to 12 C.F.R. § 1024.38 makes clear that the Consumer Financial Protection Bureau ("CFPB") "adopt[ed] § 1024.38 pursuant to its authority under section 19(a) of RESPA," codified at 12 U.S.C. § 2617(a), as well as sections 1021, 1022, and 1032 of the Dodd-Frank Act, codified at 12 U.S.C. § 5511, § 5512, and § 5532 respectively. Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10779 (Feb. 14, 2023) (preamble).

None of these sections permit private enforcement of 12 C.F.R. § 1024.38. Each grants broad rulemaking authority to the CFPB and lacks any indication that Congress intended to create a private right of action. *See* 12 U.S.C. § 2617(a) ("The

Bureau is authorized to prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of this chapter."); *id.* § 5511(a) ("The Bureau shall seek to implement and, where applicable, enforce Federal consumer financial law consistently for the purpose of ensuring that all consumers have access to markets for consumer financial products and services and that markets for consumer financial products and services are fair, transparent, and competitive."); *id.* § 5511(b) (providing that "[t]he Bureau is authorized to exercise its authorities under Federal consumer financial law for the purposes of ensuring" the achievement of specified objectives); *id.* § 5512(b)(1) ("The Director may prescribe rules and issue orders and guidance, as may be necessary or appropriate to enable the Bureau to administer and carry out the purposes and objectives of the Federal consumer financial laws, and to prevent evasions thereof."); *id.* § 5532(a) ("The Bureau may prescribe rules to ensure that the features of any consumer financial product or service, both initially and over the term of the product or service, are fully, accurately, and effectively disclosed to consumers in a manner that permits consumers to understand the costs, benefits, and risks associated with the product or service, in light of the facts and circumstances.")

In fact, the CFPB intentionally and explicitly promulgated this regulation pursuant to these sections in order to prevent its enforcement through private suits. The proposed rule was to be promulgated pursuant to section 6 of RESPA. Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. at 10778. However, "[u]ltimately, the Bureau agree[d] with the commenters that allowing a private right of action for the provisions that set forth general servicing policies, procedures, and requirements would create significant litigation risk." *Id.* Accordingly, the preamble to 12 C.F.R. § 1024.38 explained, "the Bureau is restructuring the final rule" so that it does not "provide[] private liability for violations of § 1024.38." *Id.* at 10779. "Thus, the Bureau no longer relie[d] on its authorities

under section 6 of RESPA to issue § 1024.38" and instead promulgated this regulation pursuant to the provisions identified above. *Id.*

Scores of district courts both in the Ninth Circuit and nationwide have reached the same conclusion. *See, e.g.*, *Sconiers v. Carrington Mortg. Servs. LLC*, No. 1:25-cv-01350-JLT-FJS, 2026 WL 1295758, at *2 (E.D. Cal. May 12, 2026) ("There is no private right of action under § 1024.38."); *Potter v. Clear Recon Corp.*, No. 2:24-cv-01173-LK, 2025 WL 2223454, at *4 (W.D. Wash. Aug. 5, 2025) (holding plaintiff's section 1024.38 claim "must be dismissed for lack of a private right of action" and collecting cases); *Vanisi v. Citibank, N.A.*, No. 3:23-cv-02835-RFL, 2024 WL 1091196, at *2 (N.D. Cal. Feb. 26, 2024) (holding "section 1024.38 . . . does not provide a private right of action" and collecting cases); *see also Khurana v. Clear Recon Corp.*, No. 4:24-cv-01741-KAW, 2025 WL 870416, at *5 (N.D. Cal. Mar. 20, 2025) (explaining that "districts [sic] courts across the country have found that there is no private enforcement of this provision"); *Smith v. Nationstar Mortg.*, No. 2:15-cv-13019, 2015 WL 7180473, at *4 (E.D. Mich. Nov. 16, 2015) ("[T]he court holds that violations of § 1024.38 cannot support a private action."). The Court thus joins those courts in holding Plaintiff lacks a cause of action through which to sue for violation of this regulation and dismisses Plaintiff's first claim.

**II. Leave to Amend**

Requests for leave to amend should be granted with "extreme liberality." *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (quoting *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009)). When deciding whether to grant leave to amend, a district court should consider undue delay, the movant's bad faith or dilatory motive, repeated failure to cure deficiencies through prior amendments, undue prejudice to the opposing party, and futility. *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). However, the "general rule that parties are allowed to amend their pleadings does not extend to cases in which any amendment would be an exercise in futility or where the amended complaint would also be subject to

dismissal." *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (quotation omitted). "Futility alone can justify a court's refusal to grant leave to amend." *Id.*

With these factors in mind, the Court finds amendment would be futile as the question this motion turns on is purely a question of law. Accordingly, Plaintiff's 12 C.F.R. § 1024.38 claim is dismissed without leave to amend.

**III. Remand**

A district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). As Defendant removed this action based solely on federal question jurisdiction (ECF No. 1 at 2–3) and the Court has dismissed Plaintiff's only federal law claim, the Court must now decide whether to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *See Renteria-Hinojosa v. Sunsweet Growers, Inc.*, 150 F.4th 1076, 1096 (9th Cir. 2025) (explaining that "after a district court dismisses federal claims in an action on non-jurisdictional grounds, it is required to exercise its discretion to decide whether it is appropriate to keep the state claims in federal court" (quotation omitted)); *see also Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 n.3 (9th Cir. 1997) (en banc) (noting a court may sua sponte decide whether to exercise supplemental jurisdiction). Where, as here, only state law claims remain, "federal law is not where the real action is" and the court "should[] kick the case to state court." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025). Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims and remands the case to state court.

////

////

////

////

////

////

**CONCLUSION**

For the reasons stated above, the Court GRANTS Defendant's Motion to Dismiss (ECF No. 5) with respect to Plaintiff's first cause of action (ECF No. 1-1 ¶¶ 24–37), declines to exercise supplemental jurisdiction over Plaintiff's remaining claims, and REMANDS the case. The Clerk of Court is directed to remand this case to the Superior Court of California, County of Shasta and close the case.

IT IS SO ORDERED.

Dated: **August 11, 2026**

Daniel J. Calabretta

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC7 – Moore26cv01854.mtd